■ RONALD LANG et al., Appellants-Respondents, v CITY OF NEW YORK et al., Respondents-Appellants, and CHUBB GROUP OF INSURANCE COMPANIES, Appellant. — In a negligence action to recover damages for personal injuries (1) the parties cross-appeal, as limited by their briefs, from so much of a judgment of the Supreme Court, Kings County (Kartell, J.), entered December 28, 1981, as, upon a jury verdict, awarded damages to the plaintiffs as against the defendants, and (2) the Chubb Group of Insurance Companies appeals from an order of the same court (Spodek, J.), dated January 17, 1983, which granted plaintiffs' motion to vacate the insurance company's lien against the proceeds of the

afore-mentioned judgment. Judgment reversed, insofar as appealed from, on the law, and new trial granted on the issue of damages only, without costs or disbursements. Appeal from the order dismissed, as academic, without costs or disbursements, in light of the determination of the appeal from the judgment. In our view, Trial Term erred in precluding the plaintiffs from introducing evidence of their basic economic loss as against the municipal defendants, which are not "covered persons" within the meaning of subdivision 10 of section 671 of the Insurance Law, and are therefore parties against whom such damages may be recovered (Insurance Law, § 673, subd 2). Accordingly, the plaintiffs must be afforded a new trial on the issue of damages, at least as against the municipal defendants, and since the introduction of this evidence may well affect the size of the verdict for anticipated future medical expenses and lost earnings, a new trial on the issue of damages as against the individual defendant is warranted as well (cf. Insurance Law, § 673, subd 3). In light of our determination reversing the judgment, it is not necessary to pass upon the propriety of the order dated January 17, 1983, except to observe that the no-fault insurer's lien on the judgment can only attach to so much of the plaintiffs' ultimate recovery as represents reimbursement for basic economic loss (*Aetna Cas. & Sur. Co. v Jackowe*, 96 AD2d 37; *Matter of Celona v Royal Globe Ins. Co.*, 85 AD2d 635). We pass upon no further issue. Gulotta, J. P., Weinstein and Bracken, JJ., concur.

O'Connor, J., concurs in the result, with the following memorandum. Plaintiffs Lang and Pokorny suffered severe injuries when the motor vehicle in which they were riding, owned and operated by defendant Lawrence, entered a pool of water on East Drive in Prospect Park, Brooklyn, about 3 A.M. on May 8, 1977 and went out of control before striking a tree. In their personal injury action to recover damages against Lawrence and the municipal defendants, the jury apportioned culpability as 1% for plaintiffs, 45% for the municipal defendants and 54% for Lawrence. The jury awarded Lang the principal sum of $163,794 as damages, comprising $46,500 for lost earnings, $32,383 for future medical expenses and $84,911 for pain and suffering. The jury awarded Pokorny the principal sum of $180,208 as damages, comprising $58,974 for lost earnings, $34,816 for future medical expenses, and $86,418 for pain and suffering, although the amount was recorded without objection as $180,206. After entry of judgment, the carrier asserted a lien by letter dated February 26, 1981, in the amounts of $33,088.41 as to Lang and $52,215.10 as to Pokorny; plaintiffs brought a proceeding to vacate the lien by order to show cause dated August 27, 1982. Special Term granted the application, by order dated January 17, 1983, on the ground that the lien could only be asserted against so much of the recovery as constituted basic economic loss, which was nonexistent in this case. The parties' arguments to the contrary notwithstanding, I find that the evidence supports the amount of damages awarded by the jury. Nevertheless, I agree with the majority that the judgment must be reversed, insofar as appealed from, and a new trial granted as to damages only since the trial court improperly excluded evidence of plaintiffs' basic economic loss (Insurance Law, § 671, subd 1) against the municipal defendants, which, unlike defendant Lawrence, were not "covered" persons (Insurance Law, § 671, subd 10) under the Comprehensive Automobile Insurance Reparations Act (Insurance Law, art XVIII). By this ruling the trial court precluded plaintiffs from obtaining, as part of their award, a sum representing basic economic loss, which would then be used to satisfy the no-fault automobile insurance carrier's lien on their recovery for no-fault benefits paid or payable to plaintiffs (Insurance Law, § 673, subd 2). Moreover, inasmuch as plaintiffs' proof of basic economic loss against the municipal defendants will, in the circumstances of this case, possibly affect a new determination of damages for future medical

services and lost wages, and inasmuch as there is no appeal from the jury's apportionment of culpability between the defendants, I also agree that it is not practicable to sever the municipal defendants from this action, direct a new trial on the issue of damages as to them, and award judgment to plaintiffs against defendant Lawrence in the amount already assessed by the jury. Accordingly, at the new trial plaintiffs should proceed against the municipal defendants and Lawrence on the issue of damages, with introduction of items proving basic economic loss being limited to the municipal defendants' liability as noncovered persons under the No-Fault Insurance Law. With respect to Special Term's January 17, 1983 order, I agree with the majority's statement that the lien on the judgment can only attach to so much of plaintiffs' ultimate recovery as represents basic economic loss but only on the constraint of the cited cases. Were I able to analyze the issue free of such constraint, I would conclude that the rule of these cases — as well as *Hyde v North Riv. Ins. Co.* (92 AD2d 1001 [3d Dept]) and *United States Fid. & Guar. Co. v Stuyvesant Ins. Co.* (61 AD2d 1122, 1123 [4th Dept]) — is incorrect and that the proper rule is precisely the opposite: that the carrier's lien attaches to *any* recovery, regardless of whether such recovery includes basic economic loss. This appears to have been the original conclusion of this court in *Aetna Ins. Co. v Springsteen* (78 AD2d 532), which has since been cited with approval by the Court of Appeals in *Biette v Baxter* (57 NY2d 698, 699).\* As the appellant insurance

---

\* *Matter of Celona v Royal Globe Ins. Co.* (85 AD2d 635), *United States Fid. & Guar. Co. v Stuyvesant Ins. Co.* (61 AD2d 1122) and *Aetna Ins. Co. v Springsteen* (78 AD2d 532) involved compromises of personal injury claims against tort-feasors and subsequent assertions of the no-fault lien under subdivision 2 of section 673 of the Insurance Law, which forbids compromising such actions absent the insurer's written consent or court approval or unless the settlement exceeds $50,000, which is the maximum amount of basic economic loss compensated by first-party benefits under the no-fault insurance scheme (Insurance Law, § 671, subds 1, 2). In *Celona* (*supra*) the no-fault insurer sought to challenge so much of an arbitration award as directed it to pay first-party benefits. The award made a second carrier contingently liable for such benefits. The second carrier argued the challenge was moot because if it honored its contingent liability on a successful challenge by the first carrier, then it would be entitled to assert the no-fault lien against the settlement proceeds. Pursuant to terms of the settlement agreement, any such proceeds used to satisfy such lien were to be made good by the first insurer. Therefore, the first insurer's challenge was academic — it would pay in any event. This court disagreed on the ground that the second insurer might not be able to assert the lien because there was a "factual question of whether the settlement proceeds paid \* \* \* were for basic economic loss or noneconomic loss", and only the basic economic loss portion was subject to the lien (*Matter of Celona v Royal Globe Ins. Co., supra,* p 636). In *United States Fid. & Guar. Co. v Stuyvesant Ins. Co.* (*supra,* p 1123) the Fourth Department likewise held that not all the settlement might be subject to the lien: "A determination must be made as to what portion of the settlement, if any, reasonably represents basic economic loss \* \* \* considering all of the circumstances, including the intention of the parties in making the settlement agreement." But no such exclusion was thought proper or necessary by this court in applying the no-fault lien to the settlement in *Aetna Ins. Co. v Springsteen* (*supra*). There the $1.33 million compromise after payment of $100,000 in no-fault benefits (two separate accidents at $50,000 each) included $600,000 for medical expenses and $443,000 in legal fees. The injured party died before any of the $600,000 was drawn upon and thus, pursuant to the court-approved settlement, 85% or $510,000 reverted to the tort-feasors' insurance companies and 15% or $90,000 was paid to the decedent's estate in compromise of his wrongful death claim. This court approved assertion of the lien except to the extent that an attorney's lien may have properly attached pursuant to any retainer agreement: The "sums contributed \* \* \* in compromise of the decedent's personal injury action (which sums have since reverted, in large part, to the respective insurers) are both covered by that subdivision and subject to the plaintiff's [no-fault insurer's] lien" (pp 533-534). The decisions departing from the rule in *Aetna Ins. Co. v Springsteen* (*supra;* i.e., that the no-fault carrier's lien attaches to any recovery, whether or not representing basic economic loss) rely on a series of decisions

carrier persuasively points out, the language, operation and purpose of subdivision 2 of section 673 of the Insurance Law parallels that of subdivisions 1, 2, 2-a and 3 of section 29 of the Workers' Compensation Law. The no-fault carrier "shall have a lien against any recovery"; the workers' compensation carrier "shall have a lien on the proceeds of any recovery" (Insurance Law, § 673, subd 2; Workers' Compensation Law, § 29, subd 1). In plainly placing on plaintiffs the burden of recovering damages to reimburse the carriers, the statutes additionally authorize the carriers to proceed directly against the defendants to recover such damages if plaintiffs' tardiness in commencing their actions would prejudice the carriers (Insurance Law, § 673, subd 2; Workers' Compensation Law, § 29, subds 2, 2-a, 3). This parallelism of language and operation was noted by the Court of Appeals in *Matter of Granger v Urda* (44 NY2d 91, 98, n 2), which held that the workers' compensation carrier's lien was validly asserted to obtain reimbursement for payments made by the carrier under the No-Fault Insurance Law's basic economic loss provision (Insurance Law, § 671, subd 2, par [b]), even though no part of plaintiff's recovery in his tort action represented damages for basic economic loss. In reaching this result, the Court of Appeals took note not only of the no-fault insurance system's purpose of compensating injured plaintiffs, but also of the workers' compensation system's need for solvency in reducing the costs of industrial accidents (44 NY2d 91, 97, *supra*). Contrary to the decisions cited by the majority as well as *Hyde* (*supra*) and *United States Fid.* (*supra*), the purpose of the no-fault insurance system is not limited to compensation. It, too, needs solvency in order to reduce the costs of automobile accidents (see Governor's Memorandum, NY Legis Ann, 1973, p 298, cited in *Matter of Empire Mut. Ins. Co. [Barone]*, 85 AD2d 201, 204). Thus the Legislature has struck the balance between the insurer and insured by incorporation into the No-Fault Insurance Law from the Workers' Compensation Law the same mechanism by which the insureds are responsible for protecting the insurers' right to reimbursement of benefit payments. This court's decision in *Aetna Ins. Co. v Springsteen* (78 AD2d 532, *supra*) recognized the fact, and I believe this court should reaffirm that decision.

traceable to *Matter of Adams (Government Employees Ins. Co.)* (52 AD2d 118) and *Scinta v Kazmierczak* (59 AD2d 313). Both considered the issue of duplication of recoveries for basic economic loss, but neither involved the no-fault carrier's lien rights under subdivision 2 of section 673 of the Insurance Law. *Adams (supra)* merely held that an insurance carrier could not refuse to pay its insured certain uninsured motorist indorsement benefits simply because it was also obligated under the policy to pay no-fault benefits. *Scinta (supra, p 315)* analyzed the carrier's subrogation rights for benefits paid as "additional" personal injury protection, which is not governed by the No-Fault Law. Thus the issue of duplication of no-fault and non-no-fault benefits addressed in *Adams* and *Scinta* was irrelevant to the issue of the extent of the no-fault carrier's lien.