OPINION OF THE COURT
Lawrence J. Bracken, J.
Pursuant to the stipulation of the parties appearing before this court on March 29,1979, this matter is deemed to be an action for declaratory judgment by the plaintiffs, who seek payment of additional first-party benefits for extended economic loss pursuant to “Additional Personal Injury Protection Endorsement” included in the automobile liability policy of the plaintiff, Gilbert Record.
*1032 In the latter part of November, 1979, defendant, in compliance with the order of this court dated August 22, 1979, submitted copies of 11 NYCRR 65.6(d) (7) and NYS Form N-F 11. Defendant’s counsel’s letter dated July 1, 1980 amended the November, 1979 submission by indicating that paragraph (7) was not effective until November 30, 1977. The defendant further submitted documentation to reflect 11 NYCRR 65.3 (a) (1), subrogation clause, included in the “Additional Personal Injury Protection Endorsement” and as also included in the endorsement issued by the respondent, was in effect on June 28,1975, the date of the accident. Such clause is set forth in its entirety:
“Subrogation
“In the event of any payment for extended economic loss, the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights.”
The chronology of events, which is essential in the determination of this action, is as follows:
June 28, 1975 — The plaintiff, Judith E. Record, a passenger in a vehicle owned by Charles Steppe, was seriously injured in a one-car accident;
INSURANCE COVERAGES RELEVANT TO THIS DECLARATORY JUDGMENT ACTION:
(a) Colonial Penn Insurance Company — insurer of vehicle owned by Charles F. Steppe; coverages — liability $250,000 personal injury protection “no fault” 50,000
(b) Royal Globe Insurance Company — family automobile policy of plaintiff, Gilbert Record; coverage — Additional personal injury protection 150,000
July 14, 1975 — Date of summons of third-party action, Record v Steppe (Index No. 76-11003, Supreme Ct, Suffolk County);
July 16, 1975 — Letter from plaintiffs’ counsel to Royal Globe Insurance Company which states in part: “A claim *1033 has been made against the Colonial Penn Insurance Company for No Fault benefits to Mrs. Record. However, we are putting you on notice in the event that her medical bills should exceed the coverage provided by Mr. Steppe’s policy with the Colonial Penn Insurance Company.”
July 17, 1975 — Third-party action commenced by the plaintiffs herein against Charles Steppe;
September 11, 1975 — Verified complaint in third-party action; first cause of action on behalf of plaintiff, Judith E. Record, seeks damages in the sum of $3,500,000; second cause of action on behalf of Gilbert R. Record seeks damages in the sum of $1,000,000 for medical expenses and loss of services;
September 16, 1975 — Letter from plaintiffs’ counsel to Royal Globe Insurance Company seeking copy of claim form, if any, for excess claim for lost earnings for Judith E. Record;
October 8,1975 — Letter from plaintiffs’ counsel to Royal Globe Insurance Company, which confirmed that Judith E. Record was still confined to St. Charles Hospital;
March 25,1977 — Settlement of third-party action (Index No. 76-11003). The general release includes the following typewritten clause: “This release is limited to the third-party action for personal injuries to judith record and loss of services of gilbert record. It in no way releases the colonial penn insurance company or any other insurance carrier for payments due judith record under the no-fault provisions of the insurance law of the State of New York (Comprehensive Automobile Insurance Reparations Act).”
May 10, 1977 — Letter from plaintiffs’ counsel to Royal Globe Insurance Company advising that Judith E. Record’s medical bills and loss of earnings exceeded the $50,000 no-fault amount paid by the insurer of the Steppe vehicle, thus permitting a claim “under the no fault provisions of the policy of insurance that they [Mr. and Mrs. Record] had with your organization.” (Note: claim was not under the no-fault provision; special endorsement for “Additional Personal Injury Protection” was the basis of the claim.)
*1034 February 15, 1978 — Letter from Royal Globe Insurance Company to plaintiffs’ counsel which states the following with respect to the additional personal injury protection coverage: “We believe that our exposure is up to $100, 000.00 to include both medical and loss of earnings.”
February 21, 1978 — Letter from Royal Globe Insurance Company to plaintiffs’ counsel: (the company) “does hereby claim to have a lien on the proceeds of any recovery, whether by judgment, settlement or otherwise, to the extent of the amount expended to date of first party benefits, or additional benefits to be paid to applicant Judith Record.” (Note: Colonial paid the first-party benefits.)
Plaintiffs’ demand for arbitration served upon Royal Globe Insurance Company was withdrawn without prejudice to seeking a judicial determination as to the duties and obligations, if any, of Royal Globe, and this declaratory judgment action was then commenced by the plaintiffs.
At the outset, where an insured brings a third-party action for pain and suffering, he should not be obliged to reimburse out of such recovery any additional first-party benefits for extended economic loss received from a carrier. The subrogation provision (supra), relating to payment of such additional first-party benefits for extended economic loss, is in this instance limited to recovery by way of verdict or settlement in such third-party action (Scinta v Kazmierczak, 59 AD2d 313).
In addition, where the tort-feasor secures a release from the insured with full, knowledge that the said insured has already been indemnified by the insurer, such release does not act to bar the insurer’s subrogation rights (Kozlowski v Briggs Leasing Corp., 96 Misc 2d 337; cf. Matter of Levine v Zurich Amer. Ins. Co., 49 NY2d 907, 908 [wherein the court, in reversing and reinstating an arbitration award, stated: “Since the plaintiff sought a sum greatly in excess of $180,000 for the objective, permanent injuries sustained and for his prospective vocational handicap, it is not inconceivable that the jury, in arriving at its compromise figure may have decided not to include the no-fault items in its own computation of damages”]).
*1035 It has been concluded that the execution and delivery of a release by a plaintiff in a third-party action, without reservation of the subrogation rights of the carrier, served to discharge the carrier from any future liability to the plaintiff where the policy in question afforded the injured plaintiff additional personal injury protection (Davies v Nationwide Mut. Ins. Co., 99 Misc 2d 899). It has likewise been held that a general release given to a tort-feasor and his insurers did not serve as a bar to the prosecution of a subrogation claim by the injured party’s insurer where the said tort-feasor’s insurer had actual notice of the existence of the potential subrogation claim (Government Employees Ins. Co. v Halfpenny, 103 Misc 2d 128).
In the within instance, plaintiffs were obligated to execute and deliver such instruments and do whatever else was required of them to secure the right of subrogation of Royal Globe and to do nothing to prejudice such right. The question for determination is whether the said release served to impair or extinguish Royal’s right to recovery for payment of claims presented prior to the execution and delivery of the release in question; did the release given in consideration of payment of the sum of $225,000 encompass all damages, including all additional first-party benefits for extended economic loss to be paid in future? The release in question did not by its terms reserve claims for “extended economic loss”; in fact, such reservation is limited to the no-fault provisions which entail basic economic loss. A review of article 18 of the Insurance Law — Comprehensive Automobile Insurance Reparations Act (§ 671 et seq.)— makes no provision for extended economic loss coverage.
This court further determines that the language of the release extends to all damages, including extended economic loss, and the execution and delivery of such release served to release the defendant, Royal Globe, of any further obligation to the plaintiffs under the “Additional Personal Injury Protection” provision of the said policy in question.
In accordance with the foregoing holdings, this court declares that the plaintiffs by the execution and delivery of the general release dated March 25,1977, in the said third-party action, which release did not reserve the subrogation *1036 right of the defendant, Royal Globe, for extended economic loss incurred both prior to and subsequent to March 25, 1977, compensated plaintiffs for all damages, including extended economic loss. This court further declares that the said general release executed by the plaintiffs has prejudiced the said subrogation right of the defendant, Royal Globe, and plaintiffs have thus waived any right to recover from defendant, Royal Globe, for any payments under the “Additional Personal Injury Protection” provision of the policy issued by the said defendant.